John W. Sweeny, J.
This action was commenced as a proceeding under article 78 of the CPLR to compel the Building Inspector of the Town of Monroe to issue a building permit to the petitioner (improperly styled plaintiff) so that he might extend an existing mobile home park situate on a 10-acre parcel in the Village of Harriman to a contiguous 36-acre parcel lying in the Town of Monroe. The petitioner also sought an adjudication that the zoning ordinance of the Town of Monroe is unconstitutional as it affects mobile homes and mobile home parks.
Mr. Justice Clare J. Hoyt, of this court, disposed of the preliminary questions raised by the pleadings in a decision dated December 21,1967 which held, inter alia, that while a proceeding under article 78 of the CPLR might not be the proper form to raise the constitutional question, dismissal for that reason was not proper, because the affected parties were before the court and the constitutional issue had been briefed and argued. The court continued the proceeding as an action for a declaratory judgment and treated the pleadings as the complaint and answer, under the authority of Matter of Nowak v. Wereszynski (21 A D 2d 427). The court which rendered the earlier decision summarized the factual situation and the petitioners’ argument in these words:
*981 “ Petitioner proposes to construct 346 mobile home sites on his 36 acre parcel. His first application for a building permit for this purpose was returned by the building inspector with instructions that the proposed construction be indicated so that action might Ibe taken on the application. A second application was prepared and submitted to the building inspector but it has not been acted upon.
“ The Town zoning ordinance classifies petitioner’s land as B-150 — a residential zone classification. Permitted uses include a single family detached dwelling on lots containing at least 25,000 square feet and being at least 160 feet wide. Dwelling is defined by the ordinance to include mobile homes but dwelling units must have a minimum habitable floor area of not less than 900 square feet. Mobile homes meeting the size requirements are permitted uses in all residential zone classifications because they are defined as dwellings. The sites upon which they are located, however, must comply with the minimum lot size for that residential zone. No special or separate provision is made in the ordinance for mobile home parks or courts. Bather, respondents say, a mobile home park must be treated like any other subdivision and thus proposed mobile home parks are subject to all the Town’s subdivision regulations and to planning board approval. Petitioner claims that the Town has effectively excluded mobile homes from its boundaries under the guise of permitting them in all residential zones. He argues that it is a rare mobile home that contains 900 square feet of habitable floor area and further that it is not economically feasible to require that mobile home sites contain 10,000 square feet or more, the minimum lot size for various residential zones.”
The court further held that the issue of the constitutionality of the ordinance is presented on the town’s motion to dismiss for legal insufficiency and treated the motion as one for summary judgment under CPLR 3211 (subd. [c]). The decision encompassed an analysis of the question of law presented and of the authorities which affect it and concluded, “ But these cases did not pass upon the constitutional issue here presented. That issue is whether by defining mobile homes or dwellings and thus requiring that .they contain at least 900 square feet of floor space, that they be placed on ordinary building lots, etc., the town has unreasonably restricted mobile homes whether individually placed or in parks or courts. This issue must be resolved by trial. It may then be determined whether the restrictions are reasonable or whether in effect they amount to a practical exclusion of mobile homes and mobile home courts *982 from the town. ’ ’ The court pointed out the dearth of appellate authority on the question whether a town can constitutionally exclude trailers from its territory. That question is not passed upon here. The court has taken testimony and heard the arguments of counsel upon the issue which was framed by the earlier decision and limits its decision to the question of whether the zoning ordinance constitutes a practical exclusion of mobile homes and mobile house courts.
The court finds that the zoning ordinance does not create such a practical exclusion.
The only evidence adduced by the petitioner in support of his contentions was the testimony of Donald James Smith, who described himself as chief planner for the Mobile Home Manufacturers Association and chief mobile home administrator. He is the representative of the organization composed of manufacturing members of the mobile home industry and testified frequently on its behalf as an expert witness in the field of mobile homes.
According to Mr. Smith’s testimony, 240,360 trailer and mobile homes were manufactured in 1967. Of them, 6.3% (about 17,000 or 18,000) contained 900 square feet of floor space or more. He further testified that mobile home units can be combined ‘ ‘ in any way that any one wants to combine them, ’ ’ so that they can be single-family, twó-family or even multi-family homes.
In addition, Mr. (Smith testified that a family which lives in a mobile home should not be required to have and does not need the same area of land as a family living outside a mobile home unit, because the mobile home does not become a permanent part of the land. It was noted that this witness did not qualify as an expert in land use or planning, but only in the field of mobile homes.
The Chairman of the Town Planning Board testified with respect to the planning process that went into the creation of the ordinance. The factors considered included topography, population, density and growth projection. It appears from this testimony that the planners were concerned with “ the number of homes per acre, whether they were a mobile home or a fixed home.” He stated further that there was no intent to exclude mobile homes.
¡Section 2-B-200 of the Zoning Ordinance, which creates the issue here litigated, defines dwelling to include mobile homes, provided they meet the requirements of the building code.
It was conceded by the witness Smith that more of the mobile homes now manufactured could meet these requirements, but *983 the Town Engineer testified that they could be manufactured in such a way as to comply and, in fact, one manufacturer has already received a certificate of acceptability from the State of New York for its product.
The testimony of the Town Engineer and Building Inspector was to the further effect that the topography of the town was hilly with areas that are quite rugged with large out-croppings of rock. This condition, he said, would “limit the sites that would be developed adequately for homes and necessary rooms and other facilities that are required, for example, disposal facilities.”
It appears from all of the testimony that mobile homes have been subjected to the same standards under the Town of Monroe Zoning Ordinance as are other types of residences. The reasons for imposing these standards exist independently of any effort to exclude mobile homes. It might well be that a majority of the manufacturers of mobile homes would encounter difficulty in making their product comply with the standards of the ordinance and building code. But it seems that any builder, whether of a home constructed on the site or manufactured in a factory, would have to meet the same standards, both of size and of building code compliance. The Planning Board and the Town Board were justified in not taking chances with the growth and orderly development of the town. They did not single out mobile homes for proscription but, in essence, required that they provide housing as good as that provided by permanent structures, by the single device of defining them as dwellings. The limitations upon size and land area are based upon studies of local conditions and apply with equal force to all dwellings. They were adapted to these local conditions in a logical and reasonable way, having regard to the preservation of land values and the nature of the terrain and the soil.